J-A20009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT WOOD | : | |
| | : | |
| Appellant | : | No. 1520 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001151-2020

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED DECEMBER 6, 2024**

Albert Wood appeals from the judgment of sentence, entered in the
Court of Common Pleas of Philadelphia County, following his convictions of
one count each of aggravated assault,[1] carrying a firearm without a license,[2]
carrying firearms on public streets or public property in Philadelphia,[3]
possession of an instrument of crime,[4] and person not to possess firearms.[5]
After careful review, we affirm.

---

[1] 18 Pa.C.S.A. § 2702(a).

[2] *Id.* at § 6106(a)(1).

[3] *Id.* at § 6108.

[4] *Id.* at § 907(a).

[5] *Id.* at § 6105.

On November 19, 2019, at approximately 3:15 p.m., Dorrie Shaw was waiting, at 17th and Victoria Streets in the city of Philadelphia, for his son's bus to drop him off after school.[6] Shaw was uncertain of the exact time the bus was scheduled to arrive, so he alternated between waiting in his home and waiting at the bus stop. While waiting at the bus stop, Shaw observed a group of males across the street near 17th and Pacific Streets. While Shaw was outside waiting for his son's bus, one of the men crossed the street to the side Shaw was on and began walking towards Shaw. Shaw recognized the man from his welding class but was unable to recall his name. The man walked past Shaw, before shooting him a total of nine times in the thigh, foot, scrotum, back, and right knee.[7] Shaw yelled for his girlfriend, Shakeria King, who was inside their home with their two-year-old daughter. King called the police, who arrived at the home and transported Shaw to Temple Hospital.

Shaw told police that he got a good look at the man's face and recognized him as a fellow student at welding school but could not recall his name. On November 25, 2019, Detective Michael Accrenza went to 1641 West Venango Street and recovered surveillance videos that depicted some portions

---

[6] Shaw's son was five-years-old at the time and has Down Syndrome. The day of the shooting, November 19, 2019, was his son's first day using the school bus service.

[7] Shaw survived his injuries. However, as a result of the shooting, Shaw's scrotum "burst" and he was unable to urinate without a catheter for three months. *See* N.T. Jury Trial (Day 2), 8/5/21, at 113, 119-21. Additionally, Shaw was unable to walk for a month. *See id.*

of the attack on Victoria Street.[8]  On the videos, police were able to identify a man named "Leary" who was seen walking up and down the street, but never showed him cross over to the side of the street where Shaw was shot. Nevertheless, the police arrested "Leary" and brought him to Shaw's hospital room, where Shaw stated "that's not the person who shot me."

Detective William O'Brien processed the crime scene.  He photographed and recovered five 9mm casings and a one deformed projectile.  No firearm was recovered.  Detective O'Brien testified that he could conclude a semi-automatic firearm was used in the shooting because a semi-automatic firearm fires one round each time the trigger is pulled and ejects cartridge casings every time it is fired.  **See** N.T. Jury Trial (Day 1), 8/4/21, at 112.  By contrast, Detective O'Brien explained that a revolver would not eject cartridge casings until someone opened the chamber to dump them out.  **See id.** at 127-29, 154-55.  Thus, detective O'Brien concluded that due to the locations of the cartridge casings, he believed a semi-automatic, not a revolver, was used to shoot Shaw.  **See id.**  Detective O'Brien did not opine as to what type of semi-automatic weapon the cartridge casings came from.

_____

[8] The videos shown at trial are not part of the certified record on appeal. However, this defect does not hinder our review, as the issue presented to this Court does not deal with the sufficiency of the evidence or whether a shooting occurred.  Thus, we briefly summarize the video evidence presented at trial, based upon the transcripts.  The videos depict a man, in dark Nike hooded sweatshirt, approach Shaw and walk past him.  The man then disappears from view.  Seconds later, a man wearing a dark Nike hooded sweatshirt approaches Shaw from behind and shoots him nine times.  **See** N.T. Jury Trial (Day 1), 8/4/21, at 81, 113; **id.** (Day 2), 8/5/21, at 46, 66.

Detective Accrenza went to the Philadelphia Technician Training Institute (PTTI) at 20th Street and Girard Avenue and obtained records for all students who attended the school between June and October of 2018. Based upon the description Shaw provided, Detective Accrenza obtained driver's license photographs for 42 students, cross-referenced with the PTTI student list, and showed the photos to Shaw. Shaw identified the man featured in the 39th photo, Wood, as the shooter.

Detective James Poulos investigated Wood's Facebook page and recovered public photos including, *inter alia*, a photo from 2019 depicting Wood wearing a black Nike hooded sweatshirt and a 2016 photograph depicting Wood holding what appeared to be a Glock handgun and aiming it at the camera (the "2016 photograph"). Detective Poulos testified that the pictured firearm appeared to be a Glock handgun, but he did not opine what model it was or what caliber of bullet it might fire. **See** N.T. Jury Trial (Day 2), 8/5/21, at 198. Detective Poulos also testified that it was unlikely the firearm was a replica, but that because it was just a photograph, he could not comment on its operability. **See id.** at 202.

On November 30, 2019, Officer Zachary Zgleszewski was on patrol near 4100 Germantown Avenue and recognized Wood from a patrol alert. At the time, Wood was wearing a black Nike hooded sweatshirt like the one identified in the surveillance video and seen in the photograph of Wood on his Facebook

page. Wood was arrested and charged with, *inter alia*, the above-mentioned offenses.[9]

On March 18, 2021, the Commonwealth filed a motion *in limine* seeking to admit evidence of Wood's prior bad acts through several photographs and Facebook messages. ***See*** Motion *in Limine*, 3/18/21, at 1-10 (unpaginated). Of relevance to the instant appeal, the Commonwealth sought to introduce the 2016 photograph.[10] ***See id.***

On April 8, 2021, Wood filed an omnibus pre-trial motion challenging, *inter alia*, the photographs that the Commonwealth sought to introduce. ***See*** Omnibus Pre-Trial Motion, 4/8/21, at 1-2 (unpaginated). On the same day, Wood's filed a brief in opposition to the Commonwealth's Motion *in Limine*. ***See*** Defendant's Opposition to Commonwealth's Motion *in Limine* to Admit Prior Bad Acts, 4/8/21, at 1-9 (unpaginated). In particular, Wood argued that the photographs were too remote in time to be admissible, did not meet any Pa.R.E. 404(b) exceptions, were unfairly prejudicial, and should be suppressed because they were obtained without a warrant. ***See id.*** at 3-9 (unpaginated).

---

[9] Wood was also charged with criminal attempt—murder, recklessly endangering another person (REAP), and simple assault. However, the REAP and simple assault charges were *nolle prossed*, and the jury was unable to reach a unanimous decision on the attempted murder charge.

[10] The Commonwealth sought to introduce other photographs allegedly depicting Wood carrying other firearms. ***See*** N.T. Pre-Trial Hearing 5/24/21, at 8-16. Ultimately, the trial court determined that these other photographs were wholly irrelevant and inadmissible. ***See id.*** In any event, Wood challenges only the admissibility of the above-described 2016 photograph. ***See*** Brief for Appellant, at 4 n.2.

On May 7, 2021, the trial court[11] conducted a pre-trial hearing, after which it took the matter under advisement. On May 24, 2021, the trial court conducted a second pre-trial hearing, after which it concluded that the 2016 photograph was relevant and admissible so long as the jury was provided with a limiting instruction. *See* N.T. Pre-Trial Hearing, 5/24/21, at 15-16.

On August 4-6, 2021, Wood proceeded to a bifurcated jury trial on, *inter alia*, the above-mentioned aggravated assault, carrying a firearm without a license, carrying firearms on public streets or public property in Philadelphia, and PIC offenses. The remaining person not to possess firearms offense was heard by the trial court sitting without a jury.

Relevant to the claim on appeal before this Court, during trial the Commonwealth introduced the 2016 photograph of Wood. *See* N.T. Jury Trial (Day 2), 8/5/21, at 205. The trial court, at the time the 2016 photograph was presented to the jury, provided the following jury instruction:

> Ladies and gentlemen, you just heard testimony and you saw an exhibit which was marked as C-44(A)[12] and testimony concerning [Exhibit] C-44(A) was elicited from both

---

[11] We note that the pre-trial hearings were conducted by the Honorable Diana Anhalt, while the bifurcated trials were conducted by the Honorable Genece Brinkley. For the purposes of this appeal, we note that Judge Anhalt decided the pre-trial motions and that, as a result, Judge Brinkley was required to abide by Judge Anhalt's decisions pursuant to the law of the case doctrine. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (law of the case doctrine states that judges of same court should not overrule each other's decisions). We refer to both judges as the "trial court" throughout this memorandum.

[12] Exhibit C-44(A) was the trial exhibit number given to the 2016 photograph.

Commonwealth and defense counsel where it appears—a real handgun is pictured and that is what the officer—it looks like a Glock handgun.

Now, this is being shown to you for one purpose only . . . it is being offered to show this defendant's access to guns, not for any other purpose. You can't assume that he had a gun on the date in question, but this picture is only offered to show his access to a gun[,] obviously on a prior occasion.

*Id.*

Then, the trial court, while charging the jury, provided the following instruction:

Next, I'm going to read an instruction I gave you during the course of the trial. As you know in this case, the defendant is charged with attempted murder, . . . , aggravated assault[,] possession of a firearm without a license, possession of a firearm on the streets of Philadelphia, and [PIC. A]ll allegedly with a gun on one date only, on 11/19/2019.

During trial you were shown a photograph posted on Facebook alleged to be [the] defendant[,] Wood[,] holding what appears to be a firearm. The Commonwealth is not alleging that this is the firearm used on November 19, 2019. As I stated during the trial, you are to consider this evidence for one purpose only and that is to show the defendant's access to weapons in October 2016, not on 11/19/2019. You cannot find the defendant guilty of all these charges solely based upon this Facebook photo. As with all the evidence, you must decide what weight, if any, to give this Facebook photo.

N.T. Jury Trial (Day 3), 8/6/21, at 83-84.

Ultimately, Wood was convicted of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. On January 19, 2022, the trial court imposed an aggregate sentence of 10 to 20 years' incarceration.

Wood filed a timely post-sentence motion[13] challenging the sufficiency of the evidence, weight of the evidence, and the Commonwealth's admission of prior bad acts evidence in the form of the above-described photograph depicting Wood holding a firearm. *See* Post-Sentence Motion, 1/31/22, at 1-3. On June 1, 2022, the trial court denied Wood's post-sentence motion by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(c) (permitting denial of post-sentence motion by operation of law).

Wood filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On November 21, 2022, the trial court authored a letter advising this Court that no Rule 1925(a) opinion would be written. *See* Letter in Lieu of Pa.R.A.P. 1925(a) Opinion, 11/21/22, at 1. In October of 2023, this Court issued a series of *per curiam* orders directing that the record be remanded and that the trial court author a Rule 1925(a) opinion because this Court was "unable to conduct an appropriate review to determine whether the trial court properly exercised its discretion" in admitting the 2016 photograph. *See* Order, 10/27/23, at 1. On December 7, 2023, the trial court filed its Rule 1925(a) opinion.

_____

[13] The 10th day to file a timely post-sentence motion was January 29, 2022, a Saturday, and, accordingly, Wood had until January 31, 2022, to file a timely post-sentence motion. *See* 1 Pa.C.S.A. § 1908 ("[w]henver the last day of any such time period shall fall on a Saturday or Sunday . . . such day shall be omitted from the computation"); *see also* Pa.R.Crim.P. 720(A)(1) ("a written post-sentence motion shall be filed no later than 10 days after imposition of sentence"). Therefore, Wood's post-sentence motion, filed on January 31, 2022, was timely filed.

Wood now raises the following claim for our review: "Where [] Wood was accused of shooting a man, was it an abuse of discretion to permit the Commonwealth to show the jury [the 2016 p]hotograph of [] Wood pointing a gun at the camera as it was irrelevant, prejudicial, and inadmissible?" Brief for Appellant, at 3.

Wood argues that the 2016 photograph was inadmissible for several reasons. *See id.* at 16-36. First, Wood contends that the firearm in the 2016 photograph is not the same weapon used in the shooting and, thus, is generally inadmissible unless it falls under an exception. *See id.* at 16. Next, Wood asserts that the "similar-weapon exception" does not apply because the Commonwealth failed to lay a foundation that the weapon was the same weapon. *See id.* at 16-25. Third, Wood posits that the 2016 photograph, taken three years prior to the instant offenses, was so remote in time as to provide no probative value. *See id.* at 25-31. Lastly, Wood argues that, even if the 2016 photograph was relevant, the probative value was outweighed by its prejudicial impact and that the trial court erred in issuing a jury instruction that failed to cure that prejudice. *See id.* at 31-36.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or

- 9 -

partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005). "It is not sufficient to persuade the appellate court that it might have reached a different conclusion[, rather,] it is necessary to show an actual abuse of the [trial court's] discretionary power." ***Commonwealth v. Bryant***, 67 A.3d 716, 726 (Pa. 2013) (citation and quotation marks omitted).

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). Pursuant to Pa.R.E. 401, evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence[] and [] the fact is of consequence in determining the action." Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." ***Drumheller***, 808 A.2d at 904. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

* * *

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses*.  Evidence of a crime, wrong[,] or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

"[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004).  Nevertheless, "[e]vidence may be admissible in certain circumstances[,] where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character."  ***Id.***  Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, or identity, or absence of mistake or accident.  ***Commonwealth v. Chmiel***, 889 A.2d 501, 534 (Pa. 2005).  When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 84 A.3d 657, 664-65 (Pa. 2014).

Unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the [fact-finder]'s attention away from its duty of weighing

the evidence impartially." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007).

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the [fact-finder]'s consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque or highly prejudicial.

***Id.***

"With regard to the admission of weapons evidence, such evidence is clearly admissible where it can be shown that the evidence was used in the crime charged." ***Commonwealth v. Edwards***, 762 A.2d 382, 386 (Pa. Super. 2000). However, where the weapon cannot be positively identified as related to the crime, "[t]he general rule is that . . . such a weapon is not admissible as evidence." ***Commonwealth v. Robinson***, 721 A.2d 344, 351 (Pa. 1998).

A carveout to these precepts is the "similar-weapon exception," which our Supreme Court has explained as follows:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact [the] accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence. **The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime.**

*Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (citations and quotation marks omitted) (emphasis added).

In *Christine*, the Pennsylvania Supreme Court explained that "[p]ossession of a handgun may be relevant even if the particular gun possessed cannot be proven to be the one used in the crime." *Id.* Simply put, the fact that the handgun was possessed by the defendant **may** "allow the inference it **could have** been used." *Id.* (emphasis added). However, the Supreme Court also held that mere "similarity" is not enough to satisfy this exception. Rather, the foundation must support an inference that they were the same weapon. *See id.* ("To the extent that cases affirm use of [the similar-weapon exception] **strictly on the basis of similarity, without an inference they were the weapons used, we reject them**.") (emphasis added).

Instantly, based upon our review of the record, it is clear that the similar-weapon exception is inapplicable. As the Commonwealth conceded at trial, it was unable to lay a foundation that would support an inference that the weapon in the 2016 photograph was the same weapon possessed by Wood in November of 2019. *See* N.T. Jury Trial (Day 2), 8/5/21, at 135-41 (Commonwealth arguing handgun depicted in 2016 photograph was offered to establish Wood had access to firearms, not that it was same firearm used in 2019); *see also id.* at 140 (Commonwealth arguing 2016 photograph could depict same firearm depicted in a 2018 photograph, which had been ruled

inadmissible at pre-trial hearings, and firearm used in 2019 shooting was likely a third firearm). Additionally, we note that the trial court concluded as much in the jury instruction it issued when charging the jury. *See* N.T. Jury Trial (Day 3), 8/6/21, at 83-84 ("The Commonwealth is **not alleging that this is the firearm used on November 19, 2019.** As I stated during the trial, you are to consider this evidence for one purpose only and that is to show the defendant's access to weapons in October 2016, not on 11/19/2019.") (emphasis added).

Moreover, Detective Poulos testified at trial that the 2016 photograph depicts what "appeared to be a Glock model handgun," but Detective Poulos could not confirm whether it was a fake or a replica Glock. *See* N.T. Jury Trial (Day 2), 8/5/21, at 198, 200-01 (Detective Poulos testifying 2016 photograph depicts Wood holding Glock handgun; pictured firearm was never found and, thus, never tested; and Detective Poulos could not verify whether pictured firearm was replica or real firearm). The Commonwealth introduced no evidence whatsoever that the weapon in the 2016 photograph is actually an operable firearm. Therefore, we cannot conclude that the Commonwealth laid any inference that it is the same weapon used in the 2019 shooting. ***See Christine***, ***supra***.

In reaching this conclusion, we emphasize that ***Christine*** disavowed mere "similarity" as an appropriate foundation for the similar-weapon exception. ***See Christine***, 125 A.3d at 401 ("to the extent that cases affirm

- 14 -

use of this exception strictly on the basis of similarity, without an inference they were the weapons used, we reject them"). We highlight that, in **Christine**, the Commonwealth conceded that the shank they sought to introduce into evidence **was not the weapon used to commit the crime**. **See id.** at 400-01 ("the [similar-weapon] exception is not in play, as the shank was admittedly not used in the pertinent assault [because t]he **theory of the exception is that the weapon possessed *could have been the weapon***") (emphasis added).

Instantly, as we discussed **supra**, the Commonwealth and trial court agreed, at trial, that the firearm depicted in the 2016 photograph **was not** used in the instant November 2019 shooting. Thus, the situation is analogous to that in **Christine**, and we conclude that the similar-weapon exception is inapplicable because the Commonwealth failed to lay a proper foundation to support such an inference. **See Christine**, **supra**. For these reasons, we conclude that the 2016 photograph was inadmissible under the similar-weapon exception. **See Christine**, **supra**.

Nevertheless, the Commonwealth's failure to satisfy the similar-weapon exception does not end our analysis. **See id.** at 402 (where similar-weapon exception is inapplicable, "admission on other grounds remain possible"). Notably, in **Christine**, our Supreme Court determined that the similar-weapon exception was inapplicable to a subsequently recovered razorblade in the defendant's cell. **See id.** However, the Court concluded that the razorblade

was admissible to show that the defendant was familiar with razorblades, and their creation. *See id.*

In *Commonwealth v. Broaster*, 863 A.2d 588 (Pa. Super. 2003), the defendant threw a firearm from a car window during a police chase three months after a murder that the defendant was accused of committing. *See id.* The Commonwealth sought to introduce evidence of the defenestrated firearm for the purpose of, *inter alia*, demonstrating that the defendant readily obtained handguns and had access to the specific type of firearm used in the murder. *See id.* at 592. Additionally, the Commonwealth made clear that the firearm was **not** the weapon used in the prior murder, as was proven by ballistics tests. *See id.* On review, this Court affirmed, concluding that the gun had probative value in connecting the defendant to the crime, and that "no unfair prejudice emanated from the admission of this evidence [because the prosecutor] took appropriate steps to inform the jury that the gun admitted into evidence was not the murder weapon . . . [and] the [trial] court's charge to the jury explained the limited use to which the jury could put [the defendant's] possession of the discarded weapon." *Id.* at 592-93.

In *Commonwealth v. Turner-Smith*, 284 A.3d 907 (Pa. Super. 2022) (Table),[14] the Commonwealth sought to introduce a photograph of the defendant holding a gun, where the defendant was charged with multiple

---

[14] *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential opinions of this Court filed after May 1, 2019, may be cited for persuasive value).

violations of the Uniform Firearms Act. There, the trial court found the photograph was admissible because "it tended to show his access to a gun similar to the one found during the incident," and gave a limiting instruction to the jury that the photograph was not proof that the defendant possessed a gun during the instant offense. **See id.** at *8. On appeal, this Court affirmed, concluding that the trial court did not abuse its discretion in admitting the photograph to show access to firearms and issued an appropriate jury instruction. **Id.** at *8-9.

Instantly, the Commonwealth contended that the 2016 photograph demonstrated that Wood had prior access to similar semi-automatic firearms. **See** Commonwealth's Brief, at 10; **see also** N.T. Jury Trial (Day 2), 8/5/16, at 135-41. We conclude that this is a permissible "other purpose" under Rule 404(b)(2). **See Christine**, **supra**; **Turner-Smith**, **supra**. Furthermore, the trial court offered two cautionary instructions to the jury, cautioning that the photograph was only to demonstrate Wood had possessed a firearm in October of 2016, **not** during the instant offense committed in November of 2019. **See** N.T. Jury Trial (Day 2), 8/5/21, at 205 (first cautionary instruction); N.T. Jury Trial (Day 3), 8/6/21, at 83-84 (jury charging instruction). Thus, we conclude that the trial court did not abuse its discretion in determining that the 2016 photograph had limited probative value and that that probative value outweighed its potential for unfair prejudice, especially in light of the trial court's limiting and cautionary instructions to the jury. **See**

Trial Court Opinion, 11/1/23, at 17 (concluding 2016 photograph had limited probative value of demonstrating Wood previously accessed semi-automatic handguns); *see also Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. Super. 2016) (jury presumed to follow trial court's instructions); *Commonwealth v. Antidormi*, 84 A.3d 738, 754 (Pa. Super. 2014) (Pennsylvania courts afforded "broad discretion in phrasing [jury] instructions, and may choose [their] own wording"). Consequently, we discern no abuse of discretion and grant Wood no relief on his claim. *See Drumheller*, *supra*.

In sum, the Commonwealth failed to lay an adequate foundation under *Christine* to support an inference that the firearm in the 2016 photograph could be the same firearm used in the instant offenses such that we conclude the 2016 photograph was not admissible under the similar-weapon exception. *See Christine*, *supra*. However, we are constrained to conclude that the photograph was admissible for another purpose under Rule 404(b)(2), i.e. that Wood had previously possessed, and had access to, firearms of a similar type as that used in the commission of the crime. *See Christine*, *supra*; *Broaster*, *supra*. Additionally, the probative value outweighed the prejudicial effect due, in large part, to the trial court's two jury instructions expressly advising the jury that it could not consider the 2016 photograph for any purpose other than that Wood had access to a similar firearm in October of 2016. *See Cash*, *supra*; *Turner-Smith*, *supra*. Accordingly, we affirm the trial court's decision to admit the 2016 photograph.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2024